*323 Justice Thomas
delivered the opinion of the Court, except as to Part IV-B.
Petitioner Billy Joe Magwood was sentenced to death for murdering a sheriff. After the Alabama courts denied relief on direct appeal and in postconviction proceedings, Magwood filed an application for a writ of habeas corpus in Federal District Court, challenging both his conviction and his sentence. The District Court conditionally granted the writ as to the sentence, mandating that Magwood either be released or resentenced. The state trial court conducted a new sentencing hearing and again sentenced Magwood to death. Magwood filed an application for a writ of habeas corpus in federal court challenging this new sentence. The District Court once again conditionally granted the writ, finding constitutional defects in the new sentence. The Court of Appeals for the Eleventh Circuit reversed, holding in relevant part that Magwood’s challenge to his new death sentence was an unreviewable “second or successive” challenge under 28 U. S. C. § 2244(b) because he could have mounted the same challenge to his original death sentence. We granted certiorari, and now reverse. Because Magwood’s habeas applica *324 tion[1] challenges a new judgment for the first time, it is not “second or successive” under § 2244(b).
I
After a conviction for a drug offense, Magwood served several years in the Coffee County Jail in Elba, Alabama, under the watch of Sheriff C. F. “Neil” Grantham. During his incarceration, Magwood, who had a long history of mental illness, became convinced that Grantham had imprisoned him without cause, and vowed to get even upon his release. Magwood followed through on his threat. On the morning of March 1,1979, shortly after his release, he parked outside the jail and awaited the sheriff’s arrival. When Grantham exited his car, Magwood shot him and fled the scene.
Magwood was indicted by a grand jury for the murder of an on-duty sheriff, a capital offense under Ala. Code §13-ll-2(a)(5) (1975).[2] He was tried in 1981. The prosecution asked the jury to find Magwood guilty of aggravated murder as charged in the indictment, and sought the death penalty. Magwood pleaded not guilty by reason of insanity; however, the jury found him guilty of capital murder under § 13 — 11— 2(a)(5), and imposed the sentence of death based on the aggravation charged in the indictment. In accordance with Alabama law, the trial court reviewed the basis for the jury’s decision. See §§ 13-11-3, 13-11-4. Although the court did not find the existence of any statutory “aggravating circumstance” under § 13-11-6, the court relied on Ex parte Kyzer, *325 399 So. 2d 330 (Ala. 1981), to find that murder of a sheriff while “on duty or because of some official or job-related act,” § 13 — 11—2(a)(5), is a capital felony that, by definition, involves aggravation sufficient for a death sentence.[3] The trial court found that Magwood’s young age (27 at the time of the offense) and lack of significant criminal history qualified as mitigating factors, but found no mitigation related to Mag-wood’s mental state. Weighing the aggravation against the two mitigating factors, the court approved the sentence of death. The Alabama courts affirmed. Magwood v. State, 426 So. 2d 918, 929 (Ala. Crim. App. 1982); Ex parte Magwood, 426 So. 2d 929, 932 (Ala. 1983). We denied certiorari. Magwood v. Alabama, 462 U. S. 1124 (1983). After the Alabama Supreme Court set an execution date of July 22, 1983, Magwood filed a coram nobis petition and an application for a stay of execution. The trial court held a hearing on the petition and denied relief on July 18, 1983.[4]
*326 Eight days before his scheduled execution, Magwood filed an application for a writ of habeas corpus under 28 U. S. C. §2254, and the District Court granted a stay of execution. After briefing by the parties, the District Court upheld Mag-wood’s conviction but vacated his sentence and conditionally granted the writ based on the trial court’s failure to find statutory mitigating circumstances relating to Magwood’s mental state.[5] Magwood v. Smith, 608 F. Supp. 218, 225-226, 229 (MD Ala. 1985). The Court of Appeals affirmed. Magwood v. Smith, 791 F. 2d 1438, 1450 (CA11 1986).
In response to the conditional writ, the state trial court held a new sentencing proceeding in September 1986. This time, the judge found that Magwood’s mental state, as well as his age and lack of criminal history, qualified as statutory mitigating circumstances. As before, the court found that Magwood’s capital felony under § 13-11-2(a)(5) included sufficient aggravation to render him death eligible. In his proposed findings, Magwood’s attorney agreed that Magwood’s offense rendered him death eligible, but argued that a death sentence would be inappropriate in light of the mitigating factors. The trial court imposed a penalty of death, stating on the record that the new “judgment and sentence [were] the result of a complete and new assessment of all of the evidence, arguments of counsel, and law.” Sentencing Tr., R. Tab 1, p. R-25. The Alabama courts affirmed, Magwood v. State, 548 So. 2d 512, 516 (Ala. Crim. App. 1988); Ex parte Magwood, 548 So. 2d 516, 516 (Ala. 1988), and this Court denied certiorari, Magwood v. Alabama, 493 U. S. 923 (1989).
Magwood filed a petition for relief under Alabama’s former Temporary Rule of Criminal Procedure 20 (1987) (now Ala. *327 Rule Crim. Proc. 32) (Rule 20 petition) claiming, inter alia, that his death sentence exceeded the maximum sentence authorized by statute; that his death sentence violated the Fifth, Eighth, and Fourteenth Amendments because it rested upon an unforeseeable interpretation of the capital sentencing statute; and that his attorney rendered ineffective assistance of counsel during resentencing. The trial court denied relief. It held that the statutory basis for Mag-wood’s death sentence had been affirmed on direct appeal and could not be relitigated. The trial court also held that Magwood’s attorney played no substantive role in the resentencing and had no obligation to dispute the aggravation, given that the District Court had required only that the trial court consider additional mitigating factors.
Magwood appealed the denial of his Rule 20 petition, arguing, inter alia, that his sentence was unconstitutional because he did not have fair warning that his offense could be punished by death, and that he received constitutionally ineffective assistance of counsel at resentencing. See Record in Appeal No. 92-843 (Ala. Crim. App.), Tab 25, pp. 23-24, 53-61.
The Alabama Court of Criminal Appeals affirmed, citing its decision on direct appeal as to the propriety of the death sentence. Magwood v. State, 689 So. 2d 959, 965 (1996) (citing Kyzer, supra, and Jackson v. State, 501 So. 2d 542 (Ala. Crim. App. 1986)).[6] The Alabama Supreme Court denied certiorari, 689 So. 2d, at 959, as did this Court, Magwood v. Alabama, 522 U. S. 836 (1997).
In April 1997, Magwood sought leave to file a second or successive application for a writ of habeas corpus challenging his 1981 judgment of conviction. See § 2244(b)(3)(A) (requiring authorization from the Court of Appeals to file a sec *328 ond or successive application). The Court of Appeals denied his request. In re Magwood, 113 F. 3d 1544 (CA11 1997). He simultaneously filed a petition for a writ of habeas corpus challenging his new death sentence, which the District Court conditionally granted. Magwood v. Gulliver, 481 F. Supp. 2d 1262, 1295 (MD Ala. 2007). In that petition, Magwood again argued that his sentence was unconstitutional because he did not have fair warning at the time of his offense that his conduct would be sufficient to warrant a death sentence under Alabama law, and that his attorney rendered ineffective assistance during the resentencing proceeding.
Before addressing the merits of Magwood’s fair-warning claim, the District Court sua sponte considered whether the application was barred as a “successive petition” under §2244, and concluded that it was not. Id., at 1283-1284 (“[H]abeas petitions challenging the constitutionality of a re-sentencing proceeding are not successive to petitions that challenge the underlying conviction and original sentence” (citing 2 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 28.3b(i), p. 1412 (5th ed. 2005) (hereinafter Hertz & Liebman) (“When a petitioner files a second or subsequent petition to challenge a criminal judgment other than the one attacked in an earlier petition, it cannot be said that the two petitions are ‘successive’ ” (emphasis in original)))).
The District Court rejected the State’s argument that Magwood had procedurally defaulted the fair-warning claim by failing to present it adequately to the state courts, noting that Magwood had presented the claim both in his Rule 20 petition and on appeal from the denial of that petition. 481 F. Supp. 2d, at 1285-1286; supra, at 326-327. Addressing the merits, the District Court ruled that Magwood’s death sentence was unconstitutional because “at the time of the offense conduct, Magwood did not have fair notice that he could be sentenced to death absent at least one aggravating circumstance enumerated in former 1975 Ala. Code § 13— 11-6.” 481 F. Supp. 2d, at 1285. The District Court also *329 found the state court’s grounds for rejecting Magwood’s ineffective-assistance claim unreasonable in light of clearly established federal law, noting that Magwood’s attorney in fact had engaged substantively in the “complete and new” resentencing, and although the attorney could not be expected to object on state-law grounds foreclosed by precedent, he was clearly ineffective for failing to raise the federal fair-warning claim. Id., at 1294 (internal quotation marks omitted).
The Court of Appeals reversed in relevant part. 555 F. 3d 968 (C Al 12009). It concluded that the first step in determining whether § 2244(b) applies is to “separate the new claims challenging the resentencing from the old claims that were or should have been presented in the prior application.” Id., at 975 (internal quotation marks omitted). Under the Court of Appeals’ approach, any claim that “challenge^] the new, amended component of the sentence” should be “regarded as part of a first petition,” and any claim that “challenged] any component of the original sentence that was not amended” should be “regarded as part of a second petition.” Ibid. Applying this test, the court held that because Magwood’s fair-warning claim challenged the trial court’s reliance on the same (allegedly improper) aggravating factor that the trial court had relied upon for Magwood’s original sentence, his claim was governed by § 2244(b)’s restrictions on “second or successive” habeas applications. Id., at 975-976. The Court of Appeals then dismissed the claim because Magwood did not argue that it was reviewable under one of the exceptions to § 2244(b)’s general rule requiring dismissal of claims first presented in a successive application.[7] See id., at 976.
*330 We granted certiorari to determine whether Magwood’s application challenging his 1986 death sentence, imposed as part of resentencing in response to a conditional writ from the District Court, is subject to the constraints that § 2244(b) imposes on the review of “second or successive” habeas applications. 558 U. S. 1023 (2009).
II
As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. § 2244(b) provides in relevant part:
“(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
“(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
“(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
“(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
“(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.”
This case turns on the meaning of the phrase “second or successive” in § 2244(b). More specifically, it turns on when a claim should be deemed to arise in a “second or successive habeas corpus application.” §§ 2244(b)(1), (2). If an appli *331 cation is “second or successive,” the petitioner must obtain leave from the court of appeals before filing it with the district court. See § 2244(b)(3)(A). The district court must dismiss any claim presented in an authorized second or successive application unless the applicant shows that the claim satisfies certain statutory requirements. See § 2244(b)(4). Thus, if Magwood’s application was “second or successive,” the District Court should have dismissed it in its entirety because he failed to obtain the requisite authorization from the Court of Appeals. If, however, Magwood’s application was not second or successive, it was not subject to § 2244(b) at all, and his fair-warning claim was reviewable (absent procedural default).
The State contends that although § 2244(b), as amended by AEDPA, applies the phrase “second or successive” to “application[s],” it “is a claim-focused statute,” Brief for Respondents 22-24, and “[c]laims, not applications, are barred by § 2244(b),” id., at 24 (citing Artuz v. Bennett, 531 U. S. 4, 9 (2000)). According to the State, the phrase should be read to reflect a principle that “a prisoner is entitled to one, but only one, full and fair opportunity to wage a collateral attack.” See Brief for Respondents 25-26 (citing Beyer v. Litscher, 306 F. 3d 504, 508 (CA7 2002); internal quotation marks omitted). The State asserts that under this “one opportunity” rule, Magwood’s fair-warning claim was successive because he had an opportunity to raise it in his first application, but did not do so. See Brief for Respondents 25-26.
Magwood, in contrast, reads § 2244(b) to apply only to a “second or successive” application challenging the same state-court judgment. According to Magwood, his 1986 re-sentencing led to a new judgment, and his first application challenging that new judgment cannot be “second or successive” such that § 2244(b) would apply. We agree.
We begin with the text. Although Congress did not define the phrase “second or successive,” as used to mod *332 ify “habeas corpus application under section 2254,” §§ 2244(b)(1) — (2), it is well settled that the phrase does not simply “refe[r] to all §2254 applications filed second or successively in time,” Panetti v. Quarterman, 551 U. S. 930, 944 (2007); see id., at 947 (creating an “exceptio[n]” to § 2244(b) for a second application raising a claim that would have been unripe had the petitioner presented it in his first application); Stewart v. Martinez-Villareal, 523 U. S. 637, 643 (1998) (treating a second application as part of a first application where it was premised on a newly ripened claim that had been dismissed from the first application “as premature”); Slack v. McDaniel, 529 U. S. 473, 478, 487 (2000) (declining to apply § 2244(b) to a second application where the District Court dismissed the first application for lack of exhaustion).[8]
We have described the phrase “second or successive” as a “term of art.” Id., at 486. To determine its meaning, we look first to the statutory context. The limitations imposed by § 2244(b) apply only to a “habeas corpus application under section 2254,” that is, an “application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court,” § 2254(b)(1) (emphasis added). The reference to a state-court judgment in § 2254(b) is significant because the term “application” cannot be defined in a vacuum. A § 2254 petitioner is applying for something: His petition “seeks invalidation (in whole or in part) of the judgment authorizing the prisoner’s confinement,” Wilkinson v. Dotson, 544 U. S. 74, 83 (2005) (emphasis added). If his petition results in a district court’s granting of the writ, “the State may seek a new judgment (through a new trial or a new sentencing proceeding).” Ibid, (emphasis in original). Thus, both § 2254(b)’s text and the relief it provides indicate *333 that the phrase “second or successive” must be interpreted with respect to the judgment challenged.
The State disagrees, contending that if the cross-reference to §2254 is relevant, we should focus not on the statute’s reference to a “judgment” but on its reference to “custody,” Brief for. Respondents 53; compare §§ 2254(a), (b) (establishing rules for review of “[a]n application for a writ of habeas corpus” on “behalf of a person in custody pursuant to the judgment of a State court” (emphasis added)) with § 2254(a) (specifying that an application may be entertained “only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States” (emphasis added)). The State explains that unlawful “custody” is the key “ 'substance requirement’ ” of § 2254, whereas being held pursuant to a state-court “judgment” is merely a “ 'status requirement.’ ” Brief for Respondents 53 (quoting 1 Hertz & Liebman § 8.1, at 391).
We find this argument unpersuasive. Section 2254 articulates the kind of confinement that may be challenged on the ground that the petitioner is being held “in violation of the Constitution or laws or treaties of the United States.” § 2254(a). The requirement of custody pursuant to a state-court judgment distinguishes §2254 from other statutory provisions authorizing relief from constitutional violations— such as § 2255, which allows challenges to the judgments of federal courts, or Rev. Stat. § 1979, 42 U. S. C. § 1983, which allows federal-court suits against state and local officials. Custody is crucial for § 2254 purposes, but it is inextricable from the judgment that authorizes it.
The State’s “custody”-based rule is difficult to justify for another reason. Under the State’s approach, applying the phrase “second or successive” to any subsequent application filed before a prisoner’s release would mean that a prisoner who remains in continuous custody for a completely unrelated conviction would have to satisfy the strict rules for review under § 2244(b) to challenge his unrelated conviction *334 for the first time. Nothing in the statutory text or context supports, much less requires, such an anomalous result. See, e. g., Beyer, 306 F. 3d, at 507 (“[A] prisoner is entitled to one free-standing collateral attack per judgment, rather than one attack per stretch of imprisonment”); cf. Dotson, supra, at 85 (SCALIA, J., concurring) (“[WJhen a habeas petitioner challenges only one of several consecutive sentences, the court may invalidate the challenged sentence even though the prisoner remains in custody to serve the others”).[9]
Ill
Appearing to recognize that Magwood has the stronger textual argument, the State argues that we should rule based on the statutory purpose. According to the State, a “one opportunity” rule is consistent with the statutory text, and better reflects AEDPA’s purpose of preventing piecemeal litigation and gamesmanship.
We are not persuaded. AEDPA uses the phrase “second or successive” to modify “application.” See §§2244(b)(1), (2). The State reads the phrase to modify “claims.” See, e. g., Brief for Respondents 51 (“Congress’ intent for AEDPA was to eradicate successive claims”). We cannot replace the actual text with speculation as to Congress’ intent. We have previously found Congress’ use of the word “application” significant, and have refused to adopt an interpretation of § 2244(b) that would “elid[e] the difference between an ‘application’ and a ‘claim,’ ” Artuz, 531 U. S., at 9; see also Gonzalez v. Crosby, 545 U. S. 524, 530 (2005) (“[FJor purposes of § 2244(b), an ‘application’ for habeas relief is a filing that contains one or more ‘claims’ ”). Therefore, although we agree with the State that many of the rules under § 2244(b) focus *335 on claims, that does not entitle us to rewrite the statute to make the phrase “second or successive” modify claims as well.[10]
The State’s reading leads to a second, more fundamental error. Under the State’s “one opportunity” rule, the phrase “second or successive” would apply to any claim that the petitioner had a full and fair opportunity to raise in a prior application. And the phrase “second or successive” would not apply to a claim that the petitioner did not have a full and fair opportunity to raise previously.
This reading of § 2244(b) would considerably undermine— if not render superfluous — the exceptions to dismissal set forth in § 2244(b)(2). That section describes circumstances when a claim not presented earlier may be considered: intervening and retroactive case law, or newly discovered facts suggesting “that ... no reasonable factfinder would have found the applicant guilty of the underlying offense.” § 2244(b)(2)(B)(ii). In either circumstance, a petitioner cannot be said to have had a prior opportunity to raise the claim, so under the State’s rule the claim would not be successive and § 2244(b)(2) would not apply to it at all. This would be true even if the claim were raised in a second application challenging the same judgment.[11]
*336 In addition to duplicating the exceptions under § 2244(b) in some circumstances, the State’s rule would dilute them in others. Whereas the exception to dismissal of fact-based claims not presented in a prior application applies only if the facts provide clear and convincing evidence “that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense,” § 2244(b)(2)(B)(ii), under the State’s rule, all that matters is that the facts “could not have been discovered previously through the exercise of due diligence,” § 2244(b)(2)(B)(i). We decline to adopt a reading that would thus truncate § 2244(b)(2)’s requirements.
IV
A
We are not persuaded by the State or the dissent that the approach we take here contradicts our precedents. The State invokes several pre-AEDPA cases denying review of claims in second or successive applications where the petitioners did not avail themselves of prior opportunities to present the claims. See Wong Doo v. United States, 265 U. S. 239 (1924); Antone v. Dugger, 465 U. S. 200 (1984) (per curiam); Woodard v. Hutchins, 464 U. S. 377 (1984) (per curiam); Delo v. Stokes, 495 U. S. 320 (1990) (per curiam); McCleskey v. Zant, 499 U. S. 467 (1991). These cases, the State contends, show that Magwood’s fair-warning claim should be dismissed as second or successive because he could have raised — but did not raise — the claim in his first application.
But none of these pre-AEDPA decisions applies the phrase “second or successive” to an application challenging a new judgment. Therefore, the decisions cast no light on the question before the Court today: whether abuse-of-the-writ rules, as modified by AEDPA under § 2244(b)(2), apply at all to an application challenging a new judgment. The State’s misplaced reliance on those cases stems from its failure *337 to distinguish between §2244(b)’s threshold inquiry into whether an application is “second or successive,” and its subsequent inquiry into whether claims in a successive application must be dismissed.
B
The dissent similarly errs by interpreting the phrase “second or successive” by reference to our longstanding doctrine governing abuse of the writ. AEDPA modifies those abuse-of-the-writ principles and creates new statutory rules under § 2244(b). These rules apply only to “second or successive” applications. The dissent contends that this reading renders AEDPA inapplicable to a broad range of abusive claims that would have been barred under prior rules. Yet, the dissent fails to cite any case in which this Court has dismissed a claim as successive or abusive if the petitioner raised it in an application challenging a new judgment.
' The dissent’s conclusion that our reading of §2254 “unmoor[s] the phrase ‘second or successive’ from its textual and historical underpinnings,” post, at 350, is unwarranted. Pre-AEDPA usage of the phrase “second or successive” is consistent with our reading. A review of our habeas precedents shows that pre-AEDPA cases cannot affirmatively define the phrase “second or successive” as it appears in AEDPA. Congress did not even apply the phrase “second or successive” to applications filed by state prisoners until it enacted AEDPA. The phrase originally arose in the federal context, see § 2255 (1946 ed., Supp. II), and applied only to applications raising previously adjudicated claims, see Sanders v. United States, 373 U. S. 1, 12 (1963). After this Court interpreted the law to permit dismissal of “abusive” claims— as distinguished from “successive” claims, see ibid.— Congress codified restrictions on both types of claims in § 2244(b), but still without using the phrase “second or successive.” See § 2244(b) (1964 ed., Supp. IV) (providing rules governing applications filed by state as well as federal prisoners). It was not until 1996 that AEDPA incorporated the *338 phrase “second or successive” into § 2244(b). In light of this complex history of the phrase “second or successive,” we must rely upon the current text to determine when the phrase applies, rather than pre-AEDPA precedents or superseded statutory formulations.[12]
C
Nor do our posi-AEDPA cases contradict our approach. Only one, Burton v. Stewart, 549 U. S. 147 (2007) (per curiam), comes close to addressing the threshold question whether an application is “second or successive” if it challenges a new judgment. And that case confirms that the existence of a new judgment is dispositive. In Burton, the petitioner had been convicted and sentenced in state court in 1994. See id., at 149. He successfully moved for resentencing based on vacatur of an unrelated prior conviction. Id., at 150. The state appellate court affirmed the conviction but remanded for a second resentencing. Ibid. In March 1998, the trial court entered an amended judgment and new sentence. Id., at 151. In December 1998, with state review of his new sentence still pending, the petitioner filed a §2254 application challenging his 1994 conviction. The District Court denied it on the merits, the Court of Appeals affirmed, and we denied certiorari. Ibid.
In 2002, after exhausting his state sentencing appeal, the petitioner filed a §2254 petition challenging only his 1998 sentence. The District Court denied relief on the merits, and the Court of Appeals affirmed. We reversed, holding that the petition challenging the sentence should have been *339 dismissed as an unauthorized “second or successive” application. Id., at 153; see § 2244(b)(3)(A). We rejected the petitioner’s argument “that his 1998 and 2002 petitions challenged different judgments.” Id., at 155; see id., at 156-157. Although the petitioner had styled his first petition as a challenge to the 1994 conviction and his second petition as a challenge to the 1998 sentence, we concluded that both attacked the same “judgment” because the 1998 sentence was already in place when the petitioner filed his first application for federal habeas relief. See id., at 156. In other words, the judgment he challenged in his 1998 application was “the same one challenged in the subsequent 2002 petition”; it “was the judgment pursuant to which [the petitioner] was being detained.” Ibid, (emphasis added). We expressly recognized that the case might have been different had there been a “new judgment intervening between the two habeas petitions.” Ibid. There was no such judgment in Burton, but there is such an intervening judgment here.
This is Magwood’s first application challenging that intervening judgment. The errors he alleges are new. It is obvious to us — and the State does not dispute — that his claim of ineffective assistance at resentencing turns upon new errors. But, according to the State, his fair-warning claim does not, because the state court made the same mistake before. We disagree. An error made a second time is still a new error. That is especially clear here, where the state court conducted a full resentencing and reviewed the aggravating evidence afresh. See Sentencing Tr., R. Tab 1, at R-25 (“The Court in f [or]mulating the present judgment has considered the original record of the trial and sentence. . . . The present judgment and sentence has been the result of a complete and new assessment of all of the evidence, arguments of counsel, and law” (emphasis added)).[13]
*340 D
The dissent’s concern that our rule will allow “petitioners to bring abusive claims so long as they have won any victory pursuant to a prior federal habeas petition,” post, at 356, is greatly exaggerated. A petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error. If a petitioner does not satisfy the procedural requirements for bringing an error to the state court’s attention — whether in trial, appellate, or habeas proceedings, as state law may require — procedural default will bar federal review. See Coleman v. Thompson, 501 U. S. 722, 729-730 (1991); O’Sullivan v. Boerckel, 526 U. S. 838, 848 (1999) (stating that the petitioner’s “failure to present three of his federal habeas claims to the [state court] in a timely fashion has resulted in a procedural default of those claims”). In this case, the State argued that Magwood procedurally defaulted his fair-warning claim by failing to raise it properly in his collateral challenge to the 1986 judgment, and sought dismissal on that ground. Only after ruling that Magwood did not procedurally default the claim did the District Court sua sponte consider whether § 2244(b) barred review.[14] We leave that procedural-default ruling to the Court of Appeals to review in the first instance. Here, we underscore only that procedural-default rules continue to constrain review of claims in all applications, whether the applications are “second or successive” or not.[15]
*341 Ironically, in an effort to effectuate what they believe is Congress’ intent not to give any unfair benefit to habeas petitioners, the State and the dissent propose an alternative rule that would “close our doors to a class of habeas petitioners seeking review without any clear indication that such was Congress’ intent.” Castro v. United States, 540 U. S. 375, 381 (2003). Many examples can be given, but one suffices to illustrate this point. Suppose that a petitioner files an application raising 10 meritorious claims challenging his conviction. The district court grants a conditional writ based on one of them, without reaching the remaining nine. Upon retrial, the state court commits the same 10 legal mistakes. (These are new errors, but no more new than the sentencing error in Magwood’s case.) Is an application presenting those same 10 claims — now based on the errors in the new judgment — “second or successive”? Under the opportunity-based rule advanced by the State and the dissent, the answer must be yes. All 10 claims would have to be dismissed. See § 2244(b)(1) (requiring dismissal of any claim presented in a prior application). The State attempts to avoid this “procedural anomal[y],” id., at 380, by suggesting that we treat the nine unadjudicated claims as part of a first application, because they were never adjudicated on the merits. Cf. Slack, 529 U. S., at 478-481; Martinez-Villareal, 523 U. S., at 643-645. As for the adjudicated claim, “Respondents assume that state judges will follow instructions imposed by federal courts,” and if not, “that federal courts will consider a petitioner’s claim that the state court violated due process by failing to honor the federal court’s mandate.” Brief for Respondents 42. We see no need to engage in such novel and complex rationalizations. AEDPA’s text commands a more straightforward rule: where, unlike in Burton, there is a “new judgment intervening between the two habeas petitions,” 549 U. S., at 156, an application challenging *342 the resulting new judgment is not “second or successive” at all.
V
The State objects that our reading of § 2244(b) would allow a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, new sentence, but also his original, undisturbed con-' viction. The State believes this result follows because a sentence and conviction form a single “judgment” for purposes of habeas review. This case gives us no occasion to address that question, because Magwood has not attempted to challenge his underlying conviction.[16] We base our conclusion on the text, and that text is not altered by consequences the State speculates will follow in another case.[17]
* * *
For these reasons, we conclude that Magwood’s first application challenging his new sentence under the 1986 judgment is not “second or successive” under § 2244(b). The Court of Appeals erred by reading § 2244(b) to bar review of the fair-warning claim Magwood presented in that application. We do not address whether the fair-warning claim is procedurally defaulted. Nor do we address Magwood’s contention that the Court of Appeals erred in rejecting his ineffective-assistance claim by not addressing whether his attorney should have objected under federal law.
*343 The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Although 28 U. S. C. § 2244(b) refers to a habeas “application,” we use the word “petition” interchangeably with the word “application,” as we have in our prior cases.

 At the time of the murder, Ala. Code §13-ll-2(a) provided: “If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment....” The offenses included “murder of any . .. sheriff. .. while ... on duty or because of some official or job-related act.” § 13-ll-2(a)(5). The same statute set forth a list of “aggravating circumstances,” § 13-11-6, but the trial court found that none existed in Magwood’s case.

 As relevant here, Kyzer did away with the prior Alabama rule that an aggravating component of a capital felony could not double as an aggravating factor supporting a capital sentence. In Kyzer, the defendant had been sentenced to death for the intentional murder of “two or more human beings” under § 13-11-2(a)(10). 399 So. 2d, at 332. The crime of murder, so defined, was aggravated by its serial nature, just as Magwood’s crime of murder, as defined under § 13-11-2(a)(5), was aggravated by the fact that he killed an on-duty sheriff because of the sheriff’s job-related acts. In Kyzer, the Alabama Supreme Court ultimately remanded for a new trial but, in order to guide the lower court on remand, addressed whether the aggravation in the charged crime, see § 13-11-2(a)(10), was sufficient to impose a sentence of death even without a finding of any “aggravating circumstance” enumerated in §13-11-6. Id., at 337. The court ruled that if the defendant was convicted under § 13-ll-2(a)(10), “the jury and the trial judge at the sentencing hearing may find the aggravation averred in the indictment as the aggravating circumstance, even though the aggravation is not listed in § 13-11-6 as an aggravating circumstance.” Id., at 339 (internal quotation marks omitted).

 The Alabama Court of Criminal Appeals subsequently affirmed the denial of Magwood’s coram nobis petition, Magwood v. State, 449 So. 2d 1267 (1984), and the Alabama Supreme Court denied Magwood’s motion to file an out-of-time appeal from that decision, Ex parte Magwood, 453 So. 2d 1349 (1984).

 See Ala. Code §13-11-7 (‘Mitigating circumstances shall be the following: ... (2) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;. . . (6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired”).

 In Jackson v. State, 501 So. 2d, at 544, the Alabama Court of Criminal Appeals held that Kyzer supported a death sentence for a defendant who was convicted for an offense committed before Kyzer was decided but was resentenced after that decision.

 The court treated Magwood’s ineffective-assistance claim as new and free of the restrictions of § 2244(b)(2), but reversed on the merits: “While there was a possible objection, Alabama’s highest court had said in Kyzer that a § 13-11-2 aggravating factor could be used as an aggravating circumstance. We are not prepared to require counsel to raise an argument that has already been decided adversely to his client’s position by a state’s highest court in order to avoid being found ineffective.” 555 F. 3d, at 977-978.

 In Slack v. McDaniel, we applied pre-AEDPA law, but “d[id] not suggest the definition of second or successive would be different under AEDPA.” 529 U. S., at 486. Courts have followed Slack in post-AEDPA cases, and the State agrees it is relevant to the question presented here. See Brief for Respondents 36, n. 13.

 Our focus on the judgment accords with current filing requirements. See Habeas Corpus Rule 2(b) (requiring any petitioner to “ask for relief from the state-court judgment being contested”); Rule 2(e) (prescribing that any “petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court”).

 The dissent recognizes that the phrase “second or successive” applies to an application as a whole, see post, at 344-346 (opinion of Kennedy, J.), but departs in other significant ways from the statutory text, see infra, at 336-337.

 This case does not require us to determine whether § 2244(b) applies to every application filed by a prisoner in custody pursuant to a state-court judgment if the prisoner challenged the same state-court judgment once before. Three times we have held otherwise. See Slack v. McDaniel, 529 U. S. 473, 487 (2000); Stewart v. Martinez-Villareal, 523 U. S. 637, 643 (1998); Panetti v. Quarterman, 551 U. S. 930, 945 (2007).
The dissent’s claim that our reading of § 2244(b) calls one of those decisions, Panetti, into doubt, see post, at 350, is unfounded. The question in this case is whether a first application challenging a new sentence in an intervening judgment is second or successive. It is not whether an application challenging the same state-court judgment must always be second or successive.

 The dissent speculates about issues far beyond the question before the. Court: See, e. g., post, at 350-351 (suggesting that our judgment-based reading of § 2244(b) calls into question precedents recognizing habeas petitions challenging the denial of good-time credits or parole). We address only an application challenging a new state-court judgment for the first time. We do not purport to constrain the scope of §2254 as we have previously defined it.

 Cf. Walker v. Roth, 133 F. 3d 454, 455 (CA7 1997) (“None of these new claims were raised in his first petition, nor could they have been; [the petitioner] is attempting to challenge the constitutionality of a proceeding *340 which obviously occurred after he filed, and obtained relief, in his first habeas petition”).

 See 481 F. Supp. 2d 1262, 1267 (MD Ala. 2007) (“This court split the proceedings on the current petition into two stages: stage I (determining whether the claims were procedurally defaulted) and stage II (considering the merits of the claims that were not procedurally defaulted)”). New of Magwood’s claims survived the initial cut.

 The dissent’s concern that such a petitioner may “reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review,” post, at 354, is similarly hyper *341 bolic. It will not take a court long to dispose of such claims where the court has already analyzed the legal issues.

 Several Courts of Appeals have held that a petitioner who succeeds on a first habeas application and is resenteneed may challenge only the “portion of a judgment that arose as a result of a previous successful action.” Lang v. United States, 474 F. 3d 348, 351-352 (CA6 2007) (citing decisions); see also Walker, 133 F. 3d, at 455; Esposito v. United States, 135 F. 3d 111, 113-114 (CA2 1997) (per curiam).

 In any case, we cannot agree with the dissent that our reading of § 2244(b) gives a windfall to “a defendant who succeeds on even the most minor and discrete issue.” Post, at 354. AEDPA permits relief “only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States.” § 2254(a).