**UNITED STATES of America,**

v.

**Kevin Richard HALL, Defendant.**

**No. 2:02–cr–00031–DBH.**

United States District Court, D. Maine.

Jan. 10, 2011.

Donald E. Clark, Helene Kazanjian, James W. Chapman, Jr., Evan J. Roth,

Margaret D. McGaughey, U.S. Attorney's Office District of Maine, Portland, ME, for United States of America.

William R. Fisher, Attorney General's Office, Augusta, ME, for Garnishee.

## MEMORANDUM OF DECISION and GARNISHMENT ORDER

MARGARET J. KRAVCHUK, United States Magistrate Judge.

On December 1, 2010, the United States of America applied to the Clerk of the United States District Court requesting that a Writ of Garnishment issue pursuant to 28 U.S.C. § 3205 upon a judgment entered against the defendant Kevin Richard Hall, in the above-cited action in the amount of $44,120.65. The United States indicated that the judgment balance, as of December 1, 2010, is $27,145.65.[1] The United States identified the State of Maine as the garnishee. The clerk promptly issued the writ of garnishment and it was duly served upon the Office of the Attorney General and a timely answer was filed indicating that the State of Maine held $15,411.00 of funds payable to Kevin Richard Hall. (Doc. No. 226.) Pursuant to 28 U.S.C. § 3205(c)(5) on December 22, 2010, Kevin Hall filed a timely objection to the garnishee's answer, requesting a hearing. In accordance with the statutory provision

the hearing was held on January 6, 2011, the first practicable date following receipt of the notice of objection.

### The State of Maine's Answer to the Writ of Garnishment

William Fisher, assistant attorney general, prepared and filed the answer on behalf of the State of Maine. In that answer he indicated that the State of Maine is presently in control of $15,411.00.[2] Fisher's answer explains that the $15,411.00 was seized pursuant to a search warrant that was executed at Hall's residence on February 19, 1999. For the last eleven years Hall has been involved in a legal dispute over the return of that money which was never forfeited to the State of Maine as part of any criminal prosecution. In April 1999 the Maine Drug Enforcement Agency directed a check to issue from the State of Maine, payable to Kevin Hall in the amount of $15,411.00. The check was actually issued to Hall, in care of his then attorneys, Lipman and Katz, P.A., on May 11, 1999. Hall, who was represented by counsel at the time, refused the tender of payment, maintaining that the monies seized from his residence were rare coins and bills having a value of almost $200, 000.00. Civil litigation ensued between Hall and Daniel Bradford, the MDEA agent responsible for the execution of the search warrant.

---

1. The original judgment total was arrived at by adding the $16,800.00 assessment and the order for payment of the costs of prosecution in the amount of $27,320.65. (*See* Am. J., Doc. No. 189.) Based upon representations made at the hearing on this matter, as explained more fully in the body of this decision, the judgment balance was arrived at by applying credit for the small payments made toward the original judgment from Hall's prison earnings and making an adjustment regarding the $16,800 assessment based upon the expiration of five years from the date of the original judgment. (*See* Original J., Doc. No. 95) (imposing $100.00 special assess-

ments as to specified counts of the 170 counts of the original indictment).

2. Hall's objection suggests that the State of Maine also is holding earned interest that is likewise his property. At the hearing on this matter, the attorney for the United States indicated that the United States' requested order, at least at this juncture, was limited to the $15,411.00 identified in the State's answer. I cannot locate any reference to interest in that answer. The State's answer indicates it has held the $15,411.00 since February 26, 1999, in a non-interest bearing account. (State's Answer ¶ 7, Doc. No. 226.)

The *Hall v. Bradford* litigation, which bears a state court docket number of CV–01–6, was finally resolved by jury verdict on November 9, 2010. Judgment was entered for Bradford and against Hall. (Superior Ct. J., Doc. No. 226–1.) Presumably this litigation was delayed in part because of Hall's incarceration pursuant to his federal sentence, but the pleadings do not reveal anything in this regard other than a copy of the order signed by the justice of the Superior Court directing the entry of judgment in accordance with the jury's verdict in November of last year. According to the State's Answer, following the jury's verdict the assistant attorney general represented to the presiding justice that he would take the necessary steps to secure the re-issuance of a check for $15,411.00 payable to Kevin Richard Hall, and would have done so, but for this court's issuance of the Writ of Garnishment. (State Answer ¶¶ 8–9.) It is undisputed that the State of Maine maintains control of at least $15,411.00 of non-exempt funds that are the property of Kevin Hall.

### Hall's Objections

Hall does not claim that the $15,411.00 consists of exempt funds. He has four basic objections to the issuance of any order of garnishment by this court. First, he argues that the assessment portion of the original judgment has expired pursuant to 18 U.S.C. § 3013(c) which provides that special assessments expire after a five-year period. The United States does not dispute this assertion and does not seek to collect the special assessment portion of the original judgment.[3] Second, Hall argues, one, that the order of payment of the costs of prosecution is akin to a special assessment under § 3013(c) and that, therefore, it has likewise expired or, two, the order for payment of the costs of prosecution is otherwise unenforceable. Third, he argues that, to the extent the State of Maine maintains control over interest earned on the $15,411.00,[4] that income would be entitled to the same exemptions as are statutorily accorded to earnings under 15 U.S.C. § 1673, meaning, in Hall's view, only twenty-five-percent of the interest earned would be subject to garnishment. The United States clarified at oral argument that it seeks a garnishment order in the amount of the principal only at this time and has no current claim against any interest held by the State of Maine because the State's answer did not disclose control over any interest. Thus, it is unnecessary to explain in any detail the many hurdles to treating a lump-sum interest payment in the same manner as "aggregate disposable earnings" under § 1673(a). Finally, Hall argues that pursuant to 28 U.S.C. § 3013, the court has authority to apply a concept of "reasonableness" to the exercise of its authority under the garnishment procedures. The statutory provision authorizes the court to "deny, limit, condition, regulate, extend or modify" enforcement procedures regarding court judgments. Hall believes his cir-

---

3. It is worth noting that Hall was resentenced and an amended judgment issued on May 24, 2007. Once again the $16,800.00 in special assessments was imposed. An argument might be made, pursuant to the United States Supreme Court's recent pronouncement in *Magwood v. Patterson*, 561 U.S. ——, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010), that the amended judgment triggers a new five year period. Mercifully, the United States has not chosen to pursue this line of argument.

4. Hall's objection suggests that he is entitled to $11,734.65 in interest from the State of Maine on the principal balance. (Hall Resp. ¶ 2, Doc. No. 230.) There is no indication as to what this interest calculation is based upon other than the *ipse dixit* of Mr. Hall. The amount of interest he claims conveniently coincides with the remaining amount due on the costs of prosecution portion of the judgment.

cumstances, including his recent release from imprisonment and his current financial situation, warrant limiting or denying the United States' use of an order of garnishment in these circumstances.

### Discussion

Based upon the limitation of the issues following oral argument, I believe it is necessary to address only two of Hall's four objections, that is, whether the order for payment of the costs of prosecution either expired five years after the original judgment or is otherwise unenforceable and whether there is some reason, equitable or otherwise, why this court should limit or deny the garnishment of the $15,411.00 presently under the control of the State of Maine. The other two objections have been rendered moot because of the United States' concessions and the answer filed by the State of Maine. As to any objection filed pursuant to 28 U.S.C. § 3205(c)(5), the party filing an objection "bear[s] the burden of proving such grounds."

Turning first to the portion of both the original judgment and the amended judgment that ordered Hall to pay the cost of prosecution totaling $27,320.65, the statutory authority for that provision arises under 26 U.S.C. § 7201. Willful attempt to evade or defeat any tax, as set forth in the statute, provides that the potential penalty for violation includes the imposition of the costs of prosecution. Counts 165–170 of the indictment upon which Hall stands convicted were based upon violations of 26 U.S.C. § 7201, tax evasion. The imposition of the costs of prosecution, by statute, was part of the authorized sentence as was any period of imprisonment or fine imposed. The five year expiration provision applying to special assessments is quite specific and clearly limited to those special assessments set forth in 18 U.S.C. § 3013. Hall received the full benefit of the five

year expiration provision when the United States agreed with him that it could no longer proceed to collect the $16,800.00 in special assessments imposed on this 170 count indictment. Other monetary portions of a criminal judgment, such as fines and restitution, are governed by 18 U.S.C. § 3613 which provides that the enforcement mechanism shall be in accordance with the practices and procedures for the enforcement of a civil judgment. *See United States v. Timilty*, 148 F.3d 1 (1st Cir.1998) (discussing the logical extension of 18 U.S.C. § 3613 from not only fines to an order for restitution). Liability for such payments extends until the later of twenty-years from the entry of judgment or twenty-years after release from imprisonment pursuant to § 3613(b). Hall's liability for payment of this portion of the criminal judgment has not expired if the collection procedures of § 3613 are applicable to costs of prosecution.

Hall's argument is that, because § 3613 mentions only fines and restitution, an authorized order for the costs of prosecution is necessarily excluded from those provisions. Thus, the United States would be left with no method of enforcement for that portion of the criminal judgment. Clearly § 3013, the special assessment provision, does not provide a method of enforcement for costs of prosecution even during an initial five-year period because all it does in terms of enforcement procedures is reference those procedures found at § 3613 and limits them to the five-year period. *See* 18 U.S.C. § 3013(b) ("Such amount so assessed shall be collected in the manner that fines are collected in criminal cases.") Neither Hall nor the United States has provided me with a statute or case which discusses the method of enforcement that pertains to a valid criminal judgment imposing as part of the sentence an order that the defendant pay a

particular amount as costs of prosecution. I can find no case or statute which discusses this precise issue.

■ Thus, I turn to the plain language of Section 3613(a) which says that a judgment may be enforced in accordance with the practices and procedures for the enforcement of a civil judgment under Federal or State law. It is clear that Federal law contains a provision for the issuance of writ of garnishment against non-exempt property in order to enforce a civil judgment and that this proceeding has been instituted pursuant to that procedure under 28 U.S.C. § 3205. The *Timilty* case cited above instructs that the United States is not required to obtain a separate civil judgment in order to avail itself of preexisting enforcement procedures. I therefore conclude that the method of enforcement chosen by the United States as to this judgment for the payment of costs of prosecution is an enforcement mechanism available and authorized under federal law and that a writ of garnishment can issue based upon the factual record. The defendant has not sustained his burden of proving otherwise.

■ Finally, I turn to Hall's contention that this court should exercise its discretion to limit or modify the reach of the garnishment order. For purposes of this order, I accept Hall's argument that under 28 U.S.C. § 3013 this court has discretion to consider Hall's personal circumstances in fashioning some limitation on the reach of the garnishment order. Hall indicated at the hearing that he will be formally released from the Bureau of Prisons' custody to begin his term of supervised release at the end of the month. He is currently on home confinement, subject to electronic monitoring, and living in the Belfast area. He has recently obtained employment in a minimum wage position. Sadly, Hall's circumstances are actually better than those of most prisoners released from state or federal sentences and left to re-establish themselves in the community. He has employment, a place to live, and did not argue that he has serious mental health or substance abuse problems. In these circumstances, and assuming that this court has discretion to employ a standard of "reasonableness" as suggested by Hall, I find it entirely reasonable to order that the $15,411 in control of the State of Maine be subject to the Writ of Garnishment and made payable to the United States of America in partial satisfaction of the amended judgment entered by United States District Court Judge D. Brock Hornby on May 24, 2007.

### Conclusion

Based upon the foregoing, entry will be: The debtor's objections to the Writ of Garnishment are overruled. The garnishee, State of Maine, is directed to dispose of the $15,411.00 of nonexempt property in its control by paying such sum to the United States of America fourteen days following the entry of this order on the docket.

### *CERTIFICATE*

Any objections to this order shall be filed in accordance with Fed.R.Crim. P. 59.

*So Ordered.*